FILED
DISTRICT OF WYOMING
CHEYENNE

2003 MAY 22  PM 2: 25

CLERK
U.S. DISTRICT COURT

Raymond B. Hunkins
JONES, JONES, VINES & HUNKINS
P.O. Box 189
Wheatland, WY  82201
(307) 322-2882

Stanley K. Hathaway (of counsel)
Rick A. Thompson
Dominique D.Y. Cone
HATHAWAY & KUNZ, P.C.
P. O. Box 1208
Cheyenne, WY  82003-1208
(307) 634-7723

ATTORNEYS FOR PLAINTIFF
PLATTE VALLEY WYO-BRASKA BEET GROWERS ASSOCIATION
AND WHEATLAND BEET GROWERS COOPERATIVE ASSN., INC.

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF WYOMING

| | | |
|---|---|---|
| **PLATTE VALLEY WYO-BRASKA BEET GROWERS ASSOCIATION and WHEATLAND BEET GROWERS COOPERATIVE ASSN., INC.** | ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **vs.** | ) ) | **Docket No.** _03-CV-109_ B |
| **IMPERIAL SUGAR COMPANY,** | ) ) | |
| **Defendant.** | ) | |

## COMPLAINT

Receipt # 300554
Summons: ✓ issued
          not issued

/

COME NOW Plaintiffs, Platte Valley Wyo-Braska Beet Growers Association and Wheatland Beet Growers Association (also "Growers' Associations" or "Associations" herein), and complain of the Defendant Imperial Sugar Company (also "Imperial" or "Sugar Company" herein), and state and allege as follows:

## JURISDICTION AND VENUE

1.  Plaintiff Platte Valley Wyo-Braska Beet Growers Association is a Wyoming corporation whose purpose is to assist its members in the business of growing sugar beets in southeastern Wyoming and western Nebraska, specifically Goshen, Platte and Laramie Counties in Wyoming; and Scottsbluff,  Morrill, Kimball, Banner and Box Butte Counties in western Nebraska; and in marketing sugar beets to sugar companies such as Imperial.  Platte Valley Wyo-Braska Beet Growers Association's principal place of business is in Torrington, Wyoming. It represents growers which had committed approximately 20,000 acres of sugar beet production to the Torrington Sugar Beet Processing Plant had it been purchased by the Growers as more fully set forth below.

2.  Plaintiff Wheatland Beet Growers Cooperative Assn., Inc. is a Wyoming corporation whose purpose is to assist its members in the business of growing sugar beets in Platte County, Wyoming and marketing sugar beets to sugar companies such as Imperial.  The Wheatland Beet Growers Cooperative Assn., Inc.'s principal place of business is in Wheatland, Wyoming.  It represents growers which had committed approximately 3,000 acres of sugar beet production to the Torrington Sugar Beet Processing Plant had it been purchased by the Growers as more fully set forth below.

3. Defendant Imperial Sugar Company is a publicly held Delaware corporation having its principal offices in Sugar Land, Texas. It is the successor in interest to Holly Sugar Company which it purchased in the late-1980's.

4. Plaintiff Associations have entered into marketing agreements to supply sugar beets grown in Platte, Goshen and Laramie Counties, Wyoming, and Scottsbluff, Morrill, Kimball, Banner and Box Butte Counties in western Nebraska to Imperial and its predecessors over an extended period of time, and have otherwise entered into transactions and agreements with Defendant Imperial and its predecessors when the Growers perceived such to be beneficial to the sugar beet growers in southeastern Wyoming and western Nebraska. Over the years, the Growers have invested substantial sums of money in and for the betterment of the Torrington Sugar Beet Processing Plant.

5. At all times material hereto, Defendant Sugar Company conducted business and/or operations within the State of Wyoming, and committed acts within the State of Wyoming leading to the damages complained of herein, within the State of Wyoming. This Court has jurisdiction over Imperial.

6. The amount in controversy in this matter exceeds this Court's jurisdictional minimum of $75,000.00.

## GENERAL ALLEGATIONS

7. The Associations incorporate herein by reference the allegations contained in paragraphs 1 through 6.

8.   At all relevant times, Imperial owned the sugar beet processing plants and associated facilities located in Torrington, Wyoming, known as the Torrington Sugar Beet Processing Plant.

9.   In 1999, acting through James Kempner, then CEO of Imperial, Imperial solicited the Platte Valley Wyo-Braska Beet Growers Association through its president, Dave Hinman, to enter into negotiations for the purchase of the Torrington Sugar Beet Processing Plant and associated facilities.  Kempner assured the Growers that they were the preferred buyers of the Torrington facility.  This was of great interest and great potential benefit to sugar beet growers in southeastern Wyoming and western Nebraska.

10. After a series of discussions, in April of 2002, the Platte Valley Wyo-Braska Beet Growers Association hired a consultant and began negotiating in earnest with the Sugar Company to purchase the Torrington facility.  Concurrently, the Platte Valley Wyo-Braska Beet Growers Association and the Wheatland Beet Growers Cooperative Assn., Inc. agreed to merge so that their combined acreage would be made available to provide sugar beets to the Torrington facility.  From and after that date, the Platte Valley Wyo-Braska Beet Growers Association negotiated with Imperial on behalf of itself and the Wheatland Beet Growers Cooperative Assn.

11. In April of 2002, Imperial entered into a written agreement with the Growers to negotiate exclusively until June 4th, 2002, with the Platte Valley Wyo-Braska Beet Growers Association for the sale of the facility.  A copy of said agreement is annexed hereto as Exhibit "A" and by this reference incorporated herein.  Imperial continued to negotiate with the Growers after June 4th until the negotiations successfully concluded on July 23rd.  At no time did Imperial indicate it was negotiating with any other entity, but the new Imperial CEO, Robert Peiser, in

late-June informed the Growers' representatives that he "would look to see if there were other options, but I will continue to work with the Growers to sell you the plant." The Growers were left with the impression they were the only parties negotiating for the sale of the Torrington Plant.

12. Both Growers' Associations relied upon a special relationship they had enjoyed with Imperial and its predecessors over many years and trusted the company to keep its word and abide by its promises.

13. On July 23, 2002, the negotiations between Imperial and the Growers were successfully concluded with a lengthy conference call during which the parties reached an agreement whereby Imperial would sell the Sugar Processing Plant and associated facilities in Torrington, Wyoming to the Platte Valley Wyo-Braska Beet Growers Association, and that Association would purchase said facility from Imperial. At the conclusion of the conference call, the President and CEO of Imperial who was charged with negotiating the transaction, Robert Peiser, assured the Growers that "we have a deal."

14. The following day, Wednesday, July 24, 2002, Imperial transmitted a final written "term sheet" to the Associations' representatives which incorporated and set forth all essential terms of the agreement with the Growers that had been arrived at on the preceding day during the lengthy conference call negotiations. (Attached as Exhibit "B" and by reference incorporated herein) That term sheet agreement was subject only to the approval of the Board of Directors which was pro forma.

15. In reliance on the promises of Imperial, the Growers Associations commenced to arrange financing, working with local government and federal agencies, and private banking institutions and prepared to close the transaction as per the agreement with the Sugar Company. In the process, the Associations and their officers spent considerable time, effort and expense in meeting the obligations they believed they had pursuant to the agreement between the Sugar Company and the Growers.

16. Instead of closing the transaction with the Platte Valley Wyo-Braska Beet Growers Association as agreed, on or about September 24, 2002, the President and CEO of Imperial, Robert Peiser, informed the Association's representatives that Imperial had already sold the Torrington facility to American Crystal Sugar Co. of Moorehead, Minnesota. Representatives of the Platte Valley Wyo-Braska Beet Growers Association informed representatives of the Wheatland Beet Growers Cooperative Assn., Inc. of the bad news. The Growers, who thought they had an agreement to purchase the facility and had no knowledge that Imperial was even negotiating with any other party, including American Crystal, were totally taken by surprise.

17. Prior to September 24, 2002, Imperial had never indicated to the Growers Associations or any of their representatives anything other than that the sale of the Torrington facility would be closed pursuant to the Agreement which had been reached between Imperial and Platte Valley Wyo-Braska Beet Growers Association on July 23, 2002. Indeed, all indications were to the contrary; that is, that the Sugar Company would be proceeding with the sale to the Growers, as agreed.

18. Imperial's sale of the Torrington facility to American Crystal Sugar Co. has caused great harm to and has damaged the Growers.

## COUNT I.  BREACH OF CONTRACT

19. Plaintiff restates and realleges Paragraphs 1-18, supra, as if fully set forth herein.

20. The Term Sheet set forth with specificity the terms of the agreement between the Sugar Company (Imperial) and the Platte Valley Wyo-Braska Beet Growers Association.

21. The purchase price for fixed assets to be paid by the Growers Associations and the liabilities to be assumed by the Growers Associations, as set forth in the term sheet and the mutual promises with respect thereto, constituted proper and valid consideration for the sale of the Torrington processing facility by Defendant Imperial.

22. In the presence of a detailed offer and acceptance, and valuable consideration, the elements of a valid contract were present; therefore, a contract was formed between Imperial and the Platte Valley Wyo-Braska Beet Growers Association, on behalf of itself and the Wheatland Beet Growers Cooperative Assn., Inc., and is represented by and fully set forth in the term sheet. (Exhibit "B," attached hereto).

23. The Growers Associations were prepared to fully and properly perform their obligations and duties under the contract.

24. By selling the processing facility to American Crystal Sugar Co., Defendant Imperial failed to perform or otherwise satisfy its obligations and duties to the Growers Association under the contract, and therefore is in default on and in breach of the same.

25. The Growers have suffered real and measurable, consequential and benefit of the bargain damages as a result of Defendant's breach of contract, in an amount that will be proven at the trial of this matter.

## COUNT II. ANTICIPATORY REPUDIATION

26. Plaintiff restates and realleges Paragraphs 1-25, supra, as if fully set forth herein.

27. By the following acts, the Sugar Company has evidenced an intention to refuse performance of its contract with the Growers:

    a.  By informing the Growers that the Sugar Company had sold the Torrington, Wyoming facility to American Crystal Sugar Company of Moorehead, Minnesota.

    b.  By entering into an agreement with American Crystal Sugar Company of Moorehead, Minnesota for the sale of the Torrington facility to that company after they had entered into an agreement with the Growers for the sale of the same facility.

    c.  By abandoning Imperial's obligations under the Term Sheet mentioned above.

28. The Sugar Company's refusal to perform its obligations under the contract is unequivocal and absolute.

29. As a result of the Sugar Company's anticipatory repudiation of its contract with the Growers, the Growers are entitled to recover their consequential and benefit of the bargain damages in an amount to be proven at trial.

## COUNT III.  BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

30. The contract at issue imposes upon each party a duty of good faith and fair dealing in its performance.

    a.   The implied covenant of good faith and fair dealing requires that neither party commit an act that would injure the rights of the other party to receive the benefit of the agreement.

    b.   Compliance with the obligation to perform a contract in good faith requires that the party's action be consistent with the agreed common purpose and justified expectations of the other party.

    c.   A breach of the covenant of good faith and fair dealing occurs when a party interferes with, or fails to cooperate in, the other party's performance.

    d.   Imperial, and its predecessors in interest, enjoyed a special relationship of trust and reliance with the sugar beet growers of Wyoming and western Nebraska and their associations, the Plaintiffs herein.

31. Imperial Sugar Company breached its obligation of good faith and fair dealing with the Growers in the following particulars, without limitation:

    a.   By entering into an agreement with the Growers to negotiate exclusively with the Association for the sale of the Torrington Sugar Beet Processing Plant and associated facilities when in fact, the Sugar Company was, on information and belief,

---

simultaneously and secretly negotiating with a third party for the purchase of the same facility.

b.  By secreting both the fact and progress of these negotiations with the third party from the Growers, the Plaintiffs herein.

c.  By misleading the Growers into believing that the Platte Valley Wyo-Braska Beet Growers Association had an exclusive right to negotiate for the sale of the Torrington facility.

d.  By remaining silent prior to September 24th, 2002, when the Sugar Company had a good faith duty to announce its intentions, thus causing the Growers Associations and their representatives to expend considerable time, effort and expense in preparing to close a transaction which had already been abandoned by one of the contracting partners.

e.  By complete and willful abandonment of the contract set forth in and represented by the Term Sheet (Exhibit "B") without informing the Growers or their representatives until September 24th, 2002.

32. Plaintiffs are entitled to recover damages, in tort and in contract, for all of the detriment proximately caused by the Sugar Company's breach of the implied covenant of good faith and fair dealing.

**WHEREFORE**, the Growers pray for judgment against the Imperial Sugar Company as follows:

1.  For their consequential benefit of the bargain damages under the First and Second Claims for Relief;

---

| COMPLAINT | PAGE 10 |
|---|---|

2. For all detriment proximately caused by the Imperial Sugar Company's breach of the implied covenant of good faith and fair dealing under the Third Claim for Relief.

3. For their attorneys' fees and costs; and

4. For such other and further relief as the Court deems appropriate.

DATED this _22nd_ day of May, 2003.

PLATTE VALLEY WYO-BRASKA BEET
GROWERS ASSOCIATION and WHEATLAND
BEET GROWERS COOPERATIVE ASSN., INC.,
Plaintiffs

By: _____
Raymond B. Hunkins
JONES, JONES, VINES & HUNKINS
P. O.. Box 189
Wheatland, WY  82201
(307) 322-2882
(307) 322-4827 (fax)

By: _____
Dominique D.Y. Cone
HATHAWAY & KUNZ, P.C.
P. O. Box 1208
Cheyenne, WY  82003
(307) 634-7723
(307) 634-0985 (fax)

ATTORNEYS FOR PLAINTIFFS PLATTE
VALLEY WYO-BRASKA BEET GROWERS
ASSOCIATION. and WHEATLAND BEET
GROWERS COOPERATIVE ASSN., INC.

Exhibit "A"



# IMPERIAL SUGAR COMPANY

**ROBERT J. McLAUGHLIN**
CHAIRMAN &
CHIEF EXECUTIVE OFFICER

April 10, 2002

David Hinman, President
Platte Valley Wyo-Braska Beet Growers Assn.
62 Ferguson Road
Wheatland, WY  82201

Dear Dave,

I hope you are able to put the financing together for the purchase of Torrington.  This letter will confirm the sixty (60) day exclusivity we have granted to you to purchase the facility, effective April 5, 2002.

The exclusive agreement will expire on June 4, 2002.

We have informed the general counsel for the Rocky Mountain Sugar Growers Cooperative that we are not granting permission to them to enter into a dialogue with your growers regarding the purchase of Torrington.

I will reiterate our intention to operate the Torrington facility next year.

I sincerely hope that you can put the transaction together in the next sixty days.

Best personal regards.

Sincerely,

Exhibit "B"

## TERM SHEET

## TORRINGTON, WYOMING

### Holly Beet Processing Facility

1. Purchase price for fixed assets.

    A. Cash at closing $2.0 million with a closing date of no later than September 30, 2002.

    B. At closing Buyer shall pay $2.5 mm for incurred inter-campaign repair and maintenance expenses and other deferred costs incurred for the FY02 crop processing campaign.

2. Buyer shall assume the following liabilities:

    • Retiree medical expense for current employees(OPEB calculation to be provided)
    • Environmental ("as is/where is")
    • Accrued severance and vacation

3. Purchase shall include MRO inventory.

4. Buyer shall assume all 2002 Torrington factory grower contracts.

5. Seller retains all accounts receivables and refined sugar and by-product inventory.

6. Seller shall be the exclusive marketer of all refined sugar products and by-products for a term of seven years compensated at 2.5% of NSP and an additional 0.5% in any year Seller exceeds the cumulative total of the NSP of the Western Sugar Grower Coop plus (75 points/TBD). The first year marketing fee could be estimated, prepaid at closing and reconciled at year-end at the Buyer's option. If Buyer desires to terminate the marketing agreement prior to the expiration of its initial term, it shall pay Seller the NPV, utilizing a discount rate of 6%, of the remaining marketing fee for the unexpired term based on the marketing fee incurred during the year of cancellation plus a termination fee of $250,000. Buyer may discontinue the marketing agreement if Seller is merged into or acquired by another person or entity in a traditional change of control scenario whereby more than 50% of the Seller's common stock is transferred to another and there is a change in the majority of Seller's board of directors at the time of the transaction. A financial transaction of any form diluting current shareholders but not a merger or acquisition shall be exempted from the definition of a change of control.

7.  The Buyer shall receive the Torrington factory USDA marketing allotment of 1.08 million cwt.

8.  The Buyer shall execute a promissory note to Seller in the amount of $3.0 million that shall have a term of ten years.  This obligation shall be secured by a second lien on all fixed assets and carry an interest rate set annually on the anniversary of the effective date at prime plus 3% but not to exceed a maximum of 6% per annum.  Interest shall be accrued and capitalized into the value of the promissory note and repaid after the principal amount as described in Article 9, however, interest shall not begin to accrue until the year in which acreage harvested by Buyer has exceeded 22,000 acres.  If Buyer at some later date secures additional working capital financing and that new lender requests collateral, Buyer shall use its best efforts to retain Seller's lien position pari passu with this new lender.

9.  This note shall be repaid over its ten-year term based upon the acquisition of additional grower acreage by the Buyer.  Additional acres harvested in each campaign year shall repay this term loan at the rate of $75.00 per acre per annum for each acre in excess of 22,000 and up to 26,000 and $50.00 per acre per annum for each acre in excess of 26,000 until the full term debt of $3.0 million plus any accrued interest is paid to Seller.  The note shall be null & void and no further payments due after December 31, 2012.

10. This term sheet is proprietary and confidential between the parties and shall not become binding on the parties until approved by their respective boards of directors and senior secured lenders.

July 24, 2002